IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DOUGLAS MACARTHUR AND ADELE MACARTHUR,<br><br>   PLAINTIFFS<br><br>V.<br><br>CERTAIN UNDERWRITERS/NAMES AT LLOYD'S OF LONDON; RALPH S. JANVEY, IN HIS CAPACITY AS RECEIVER FOR STANFORD INTERNATIONAL BANK, LTD.; BRIT SYNDICATES LIMITED; QBE UNDERWRITING LIMITED; ACE UNDERWRITING AGENCIES LIMITED; CHAUCER SYNDICATES LIMITED; PEMBROKE MANAGING AGENCY LIMITED; TALBOT UNDERWRITING LTD; ARCH SPECIALTY INSURANCE COMPANY,<br><br>   DEFENDANTS | CAUSE NO. 3:10-CV-_____-N<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE DAVID C. GODBEY:

NOW COME Plaintiffs Douglas MacArthur and Adele MacArthur ("**Plaintiffs**") complaining of Certain Underwriters/Names at Lloyd's of London; Ralph S. Janvey, in his capacity as Receiver for Stanford International Bank, Ltd.; Brit Syndicates Limited; QBE Underwriting Limited; ACE Underwriting Agencies Limited; Chaucer Syndicates Limited; Pembroke Managing Agency Limited; Talbot Underwriting Ltd; and Arch Specialty Insurance Company, respectfully showing unto the Court the following:

## I. Summary

1. The Plaintiffs deposited money at Stanford International Bank, Ltd. ("**SIB**") in reliance upon certain letters purporting to be from insurance brokers Willis of Colorado, Inc. and Thompson Heath and Bond, Ltd. (hereinafter "**THB**"). Employees of SIB may have actually authored and provided these allegedly forged letters. In providing these letters, one or more employees of SIB may have violated obligations of fidelity to SIB as well as provided professional services to the Plaintiffs.

2. SIB held a Bankers Blanket Bond from Lloyd's of London, and forging these letters would be wrongful acts within the meaning of the bond, which was issued and underwritten by certain underwriter defendants identified below. Assuming this is correct, these acts of the employees caused losses to SIB, which are covered by the Bankers Blanket Bond. SIB has become insolvent and is unable to compensate the Plaintiffs for their losses directly. For this reason, the benefits to be paid under the Banker's Blanket Bond for SIB's losses related to the acts complained of by the Plaintiffs should be paid directly to the Plaintiffs, or in the alternative, paid to SIB but held in trust for the Plaintiffs or for the benefit of the Plaintiffs.

3. Plaintiffs simply do not know if the letters purporting to be from THB and Willis are genuine or the product of forgeries by employees of SIB. If these letters are forgeries, then Plaintiffs are beneficiaries of the Banker's Blanket Bond and have claims against the Underwriters. Regardless, Plaintiffs have claims against the Receiver.

## II. Parties

4. Plaintiffs are citizens of the United States and domiciliaries of Mexico.

5. Defendant Ralph S. Janvey, in his capacity as receiver for Stanford International Bank, Ltd. (the "**Receiver**"), is a citizen of Texas. He may be served with process by serving him

   © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

at his usual place of business at Krage & Janvey, LLP, 2100 Ross Avenue, Suite 2600, Dallas, Dallas County, Texas 75201, or wherever else he may be found.

6. Defendant Certain Underwriters/Names at Lloyd's of London is comprised of the following syndicates: (1) 2987; (2) 2488; (3) 1886; (4) 1084; (5) 4000; (6) 1183; and (7) upon information and belief, Arch Specialty Insurance Company (collectively, the "**Syndicates**"). The Syndicates purport to be an eligible surplus lines insurer in the state of Texas. Pursuant to TEX. INS. CODE § 804.106(b)(1), TEX. REV. CIV. STAT. art 6134, TEX. CIV. PRAC. & REM. CODE § 17.044, FED. R. CIV. P. 4(h)(1)(A), FED. R. CIV. P. 4(e)(1), and/or their contractual agreement, the Syndicates can be served with process by serving their statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Lloyd's in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

7. Defendant Brit Syndicates Limited ("**Brit**") is the managing agent of Syndicate 2987. Pursuant to TEX. INS. CODE § 804.106(b)(1), TEX. REV. CIV. STAT. art 6134, TEX. CIV. PRAC. & REM. CODE § 17.044, FED. R. CIV. P. 4(h)(1)(A), FED. R. CIV. P. 4(e)(1), and/or their contractual agreement, Brit can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Brit in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

8. Defendant QBE Underwriting Limited ("**QBE**") is the managing agent of Syndicate 1886, which is in turn a sub-syndicate of Syndicate 2999. Pursuant to TEX. INS. CODE

§ 804.106(b)(1), Tex. Rev. Civ. Stat. art 6134, Tex. Civ. Prac. & Rem. Code § 17.044, Fed. R. Civ. P. 4(h)(1)(A), Fed. R. Civ. P. 4(e)(1), and/or their contractual agreement, QBE can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to QBE in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

9. Defendant ACE Underwriting Agencies Limited ("**ACE**") is the managing agent of Syndicate 2488. Pursuant to Tex. Ins. Code § 804.106(b)(1), Tex. Rev. Civ. Stat. art 6134, Tex. Civ. Prac. & Rem. Code § 17.044, Fed. R. Civ. P. 4(h)(1)(A), Fed. R. Civ. P. 4(e)(1), and/or their contractual agreement, ACE can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to ACE in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

10. Defendant Chaucer Syndicates Limited ("**Chaucer**") is the managing agent of Syndicate 1084. Pursuant to Tex. Ins. Code § 804.106(b)(1), Tex. Rev. Civ. Stat. art 6134, Tex. Civ. Prac. & Rem. Code § 17.044, Fed. R. Civ. P. 4(h)(1)(A), Fed. R. Civ. P. 4(e)(1), and/or their contractual agreement, Chaucer can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Chaucer in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

© 2010 Pulman, Cappuccio, Pullen & Benson, LLP

11.     Defendant Pembroke Managing Agency Limited ("**Pembroke**") is the managing agent of Syndicate 4000. Pursuant to TEX. INS. CODE § 804.106(b)(1), TEX. REV. CIV. STAT. art 6134, TEX. CIV. PRAC. & REM. CODE § 17.044, FED. R. CIV. P. 4(h)(1)(A), FED. R. CIV. P. 4(e)(1), and/or their contractual agreement, Pembroke can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Pembroke in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

12.     Defendant Talbot Underwriting Ltd. ("**Talbot**") is the managing agent of Syndicate 1183. Pursuant to TEX. INS. CODE § 804.106(b)(1), TEX. REV. CIV. STAT. art 6134, TEX. CIV. PRAC. & REM. CODE § 17.044, FED. R. CIV. P. 4(h)(1)(A), FED. R. CIV. P. 4(e)(1), and/or their contractual agreement, Talbot can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Talbot in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

13.     Defendant Arch Specialty Insurance Company ("**Arch**") is, upon information and belief, an underwriter of the policy at issue in this civil action. Pursuant to TEX. INS. CODE § 804.106(b)(1), TEX. REV. CIV. STAT. art 6134, TEX. CIV. PRAC. & REM. CODE § 17.044, FED. R. CIV. P. 4(h)(1)(A), FED. R. CIV. P. 4(e)(1), and/or their contractual agreement, Arch can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos

   © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

Street, Austin, Texas 78701, who shall then forward the process to Arch in care of Mendes & Mount, Attention: Arthur Washington, 750 Seventh Avenue, New York, New York 10019-6829.

14. The Syndicates, Brit, QBE, ACE, Chaucer, Pembroke, Talbot, and Arch are collectively referred to as the "**Underwriters**."

### III. Jurisdiction

15. This dispute arises from and is related to the collapse of Stanford International Bank, Ltd. ("**SIB**"). This Court has asserted exclusive jurisdiction over all assets of SIB, including the Receivership Assets as that term is defined in "Amended Order Appointing Receiver" in the SEC's Stanford case. *See* Docket No. 157.[1] This Court has also enjoined the commencement or continuation of any proceeding against the Receiver, except in this Court. *See id.* Based upon the Amended Order Appointing Receiver (Docket No. 157), this Court appears to be asserting authority that might give rise to *in rem* jurisdiction over this civil action. Assuming there is *in rem* jurisdiction, this Court has supplemental jurisdiction over the pendent state-law claims under 28 U.S.C. § 1367.

16. In the event the Court determines it does not have jurisdiction over this civil action, Plaintiffs reserve their right to seek redress before any tribunal with jurisdiction to do so.

### IV. Background Facts

**A. The Plaintiffs' Deposits at SIB**

17. In 2006 the Plaintiffs were approached by representatives and employees of SIB and solicited to make large deposits with SIB. At this time, Plaintiffs made the specific inquiry of whether deposits with SIB were insured. After Plaintiffs were personally and directly assured by

---

[1] In the case styled and numbered *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*; Case No. 3-09CV0298-N; in the United States District Court for the Northern District of Texas, Dallas Division.

 © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

SIB's employees that SIB carried insurance to protect their deposits, Plaintiffs made an initial deposit of $500,000.00 on November 9, 2006.

18. SIB's employees caused numerous letters (the "**Insurance Letters**") to be delivered to the Plaintiffs. True and correct copies of the Insurance Letters are attached hereto as "**Exhibit A**," and adopted and incorporated herein by reference. These letters were sent by Willis of Colorado, Inc. and THB. The letters explained that SIB was the beneficiary of a "Banker's Blanket Bond" insurance policy underwritten by the Underwriters. After receiving these letters, the Plaintiffs made additional deposits with a value of almost half a million dollars in February of 2007 and November of 2007, denominated in Euros.

19. The letter from Willis of Colorado, Inc. stated that SIB "underwent stringent risk management reviews" in order to obtain insurance. The letters from Willis and from THB contain similar assurances and representations of protection.

20. Upon receipt of and in reliance upon the Insurance Letters, Plaintiffs deposited no less than $995,313.39 with SIB in exchange for certificates of deposit.

21. The Securities and Exchange Commission has alleged that SIB was a giant Ponzi scheme, and placed SIB in receivership on February 16, 2009. As of today, it appears that Plaintiffs will lose most, if not all, of their deposit with SIB.

B. **The Banker's Blanket Bond**

22. The Underwriters issued the Banker's Blanket Bond, described as Policy No. 576/MNA851300, "FINANCIAL INSTITUTIONS CRIME AND PROFESSIONAL INDEMNITY POLICY FOR STANFORD FINANCIAL GROUP COMPANY AND STANFORD GROUP COMPANY And as set out herein," effective 15th August, 2008, to 15th August, 2009, both days at 12:01 a.m., local standard time (the "**Banker's Blanket Bond**"). A true and correct copy of the

   © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

Banker's Blanket Bond is attached hereto as "**Exhibit B**," and adopted and incorporated herein by reference. The Banker's Blanket Bond is governed by the laws of the state of Texas. *See* Exhibit "B" at p. 71 of 83.

23. SIB is a named insured in the "Schedule of Insureds / Assureds 1" of the Policy. SIB paid all required premiums under the Banker's Blanket Bond. SIB purchased the Banker's Blanket Bond for the purpose of providing coverage for the fraudulent acts and dishonest acts of employees and third persons.

(i) **Financial Institution Crime Insurance**

24. Section 1 of the Banker's Blanket Bond is titled "Financial Institution Crime Insurance." SIB is a named insured under this section.

25. The first section of the Insuring Agreement of the Banker's Blanket Bond is titled "Fidelity" and indemnifies for loss resulting from "dishonest, malicious or fraudulent acts committed by an Employee acting alone or in collusion with others." Exhibit "B," at page 13 of 83.

26. Section C of the Banker's Blanket Bond is titled "Forgery or Alteration" and indemnifies for loss resulting directly from:

> transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any financial institution (or by an Employee empowered to transfer customer funds such as lending officers, trust officers, private banking officers and trading) but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution. Telegraphic, cable or teletype instructions or advices, as aforesaid, exclusive of transmissions of electronic funds transfer systems, sent by a person other than the said customer or banking institution purporting to send such instructions or advices shall be deemed to bear a signature which is a Forgery.

Exhibit "B," at page 14 of 83.

© 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

27. By letter dated February 15, 2010, Plaintiffs made demand upon THB to fulfill the guaranty contained in Thomson Heath and Bond and Willis' letters. A true and correct copy of this letter is attached hereto as "**Exhibit C**," and adopted and incorporated herein by reference. Said demand was made within the policy period of the Banker's Blanket Bond Policy.

28. Upon information and belief, the letters from THB were fabrications, are not authentic, and were fraudulent. These letters were forged by one or more employees of SIB.

29. The Stanford Banker's Blanket Bond is intended to cover exactly this risk. If the letters the Plaintiffs received are in fact a forgery or are fraudulent, then such forgery or fraudulent act resulted from dishonest, malicious or fraudulent acts committed by an employee of SIB acting alone or in collusion with others, which triggers coverage under the Banker's Blanket Bond.

30. If the letters Plaintiffs received are in fact forgeries or are fraudulent, then such letters were sent or caused to be sent from SIB's world headquarters and operations in Houston, Texas; Baldwyn, Mississippi; or Tupelo, Mississippi. If the letters were sent by third parties, the letters were sent at the direction of employees of SIB.

(ii) **Financial Institutions Professional Indemnity Insurance**

31. Section 3 of the Banker's Blanket Bond is entitled "Financial Institutions Professional Indemnity Insurance." Under Section 3, the Underwriters agreed to reimburse SIB for loss resulting from claims made for wrongful acts in the performance of professional services.

32. SIB (and other entities and persons for whose activities SIB may be vicariously liable) provided professional services for or on behalf of the Plaintiffs, including but not limited to, professional services related to the business of insurance and risk management when SIB (and other entities and persons for whose activities SIB may be vicariously liable) provided the Insurance Letters to the Plaintiffs.

33. Provision of the Insurance Letters to the Plaintiffs by SIB (and other entities and persons for whose activities SIB may be vicariously liable) was a breach of trust or of constructive trust or of fiduciary duty. In the alternative, provision of the Insurance Letters to the Plaintiffs by SIB (and other entities and persons for whose activities SIB may be vicariously liable) was negligent. In the alternative, provision of the Insurance Letters to the Plaintiffs by SIB (and other entities and persons for whose activities SIB may be vicariously liable) was a breach of professional duty. Thus, provision of the letters was a wrongful act.

34. The Plaintiffs have a claim for losses resulting from the wrongful acts in the performance of professional services by SIB, its employees, or third parties for whose acts SIB may be vicariously liable in the amount of $995,313.39.

35. The professional services rendered to the Plaintiffs were not brought about by or contributed to in fact by dishonest, fraudulent, or criminal acts or omissions or any personal profit or advantage gained by SIB's Directors, Officers, or employees to which they were not justly entitled. Any of those actions which may have occurred in relation to SIB were separate and distinct from the wrongful acts in the course of providing professional services which gave rise to the Plaintiffs' claims.

## C. Claims of the Plaintiffs as Individual Creditors

36. The proceeds of the Banker's Blanket Bond are meant to pay the Plaintiffs' claims only. The proceeds are not the property of SIB, and the claims asserted in this Complaint cannot be asserted generally on behalf of all other creditors of SIB.

37. The Banker's Blanket Bond provides two types of coverage for the Plaintiffs' losses: (1) third-party liability coverage for professional negligence under Section 3 ("Financial Institutions Professional Indemnity Insurance"), and (2) first-party coverage for third-party losses under

Section 1 ("Financial Institution Crime Insurance"). The right to the proceeds of Section 3's third-party liability coverage is a right of the Plaintiffs, not SIB.

38. The right to the proceeds of Section 1's first party coverage only arises out of SIB incurring an actual loss to the Plaintiffs. SIB has become insolvent, and while it has incurred a loss by becoming liable to the Plaintiffs, SIB has not paid this loss, and will not be able to amass assets sufficient to pay the entire loss. If SIB had remained solvent, SIB would have paid the Plaintiffs for their losses, and SIB would have been able to pursue its first-party claim under Section 1 of the policy. The Underwriters may not now "whipsaw" their way out of coverage for these losses by claiming that no loss has been incurred by SIB on account of its insolvency. The Underwriters remain liable under Section 1 of the policy. Because SIB only becomes entitled to the proceeds of coverage on account of its liability to third parties, in this case the Plaintiffs, not SIB, are the proper persons to exercise SIB's right to coverage under Section 1 of the policy.

## V. Causes of Action

39. All conditions precedent to Plaintiffs' recovery have occurred or have been waived, excused, or otherwise satisfied. All required notices have been given, or the right to receive notice has been waived, or excused.

### Count 1 – Declaratory Judgment (against the Underwriters, and the Receiver)

40. Plaintiffs repeat and incorporate the allegations contained in paragraphs 1 – 39 herein for all purposes and plead the following cause of action alternatively to the extent necessary.

41. Title 28, Chapter 151 of the UNITED STATES CODE authorizes the award of a declaratory judgment together with further necessary or proper relief.

© 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

### (a) Plaintiffs Can Recover Under the Banker's Blanket Bond

42. SIB is a financial institution. Plaintiffs have suffered a loss and damages in the amount of $995,313.39. SIB has suffered a loss in like amount. This loss is covered by the Banker's Blanket Bond. Section A of the Banker's Blanket Bond is titled "Fidelity" and indemnifies for loss resulting from "dishonest, malicious or fraudulent acts committed by an Employee acting alone or in collusion with others." Section C of the Banker's Blanket Bond is titled "Forgery or Alteration" and indemnifies for loss resulting directly from, among other things, " transferring, paying or delivering any funds or Property," and, "instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution."

43. In the event that the Insurance Letters are determined to be a forgery such that Plaintiffs cannot recover for their guaranties, then Plaintiffs seek a declaratory judgment that coverage exists under the Banker's Blanket Bond for the Lloyd's letter and the resulting loss and damage. Plaintiffs are entitled to coverage under the Banker's Blanket Bond in the amount of their losses. In addition, Plaintiffs seek other further necessary or proper relief, both general and special, at law or in equity, to which they may be entitled, including but not limited to an order requiring the Underwriters to make payment to Plaintiffs, and the award of attorneys' fees and costs.

### (b) The Receiver Holds the Banker's Blanket Bond Proceeds in Trust

44. Plaintiffs seek a declaratory judgment that the Receiver holds the right to proceeds of the Banker's Blanket Bond in trust for the benefit of Plaintiffs. The proceeds of the Banker's Blanket Bond are not the property of the receivership estate and should pass through the estate to Plaintiffs. In addition, Plaintiffs seek other further necessary or proper relief, both general and

 © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

special, at law or in equity, to which they may be entitled, including but not limited to the award of attorneys' fees and costs.

     (c)    **The Banker's Blanket Bond Covers the Plaintiffs' Losses on Account of Negligence, Professional Negligence and Breach of Trust**

45. Plaintiffs seek a declaratory judgment that the Banker's Blanket Bond covers the Plaintiffs' losses on account of negligence, professional negligence and breach of trust. Coverage exists under the Banker's Blanket Bond for these losses. In addition, Plaintiffs seek other further necessary or proper relief, both general and special, at law or in equity, to which they may be entitled, including but not limited to an order requiring the Underwriters to make payment to Plaintiffs, and the award of attorneys' fees and costs.

**Count 2 – Promissory Estoppel (against the Underwriters and Receiver)**

46. Plaintiffs repeat and incorporate the allegations contained in paragraphs 1 – 45 herein for all purposes and plead the following cause of action alternatively to the extent necessary.

47. Underwriters made a promise to Plaintiffs, and Plaintiffs reasonably and substantially relied upon said promise to their detriment. Plaintiffs' reliance was foreseeable by the Underwriters and SIB, and injustice can be avoided only by enforcing Underwriter's and SIB's promise. Plaintiffs seek recovery of all remedies to which they are entitled, including but not limited to actual damages, consequential damages, lost profits, lost income, incidental damages, reliance damages, pre- and post-judgment interest, court costs, and attorneys' fees.

**Count 3 – Common-Law Fraud and Fraudulent Inducement (against the Receiver)**

48. Plaintiffs repeat and incorporate the allegations contained in paragraphs 1 – 47 herein for all purposes and plead the following cause of action alternatively to the extent necessary.

49. SIB represented to Plaintiffs that their proposed deposits had "absolutely no risk and [were] completely guaranteed...." Said representation was material and apparently false. When SIB

made said representation, SIB either: (1) knew the representation was false; or (2) made the representation recklessly, as a positive assertion, and without knowledge of its truth. SIB made said representation with the intent that Plaintiffs act upon it. Plaintiffs actually and justifiably relied upon said representation, including by entering contracts with SIB. Said representation caused Plaintiffs to suffer injury. Plaintiffs seek recovery of all remedies to which they are entitled, including but not limited to actual damages, benefit-of-the-bargain damages, out-of-pocket damages, consequential damages, lost profits, lost income, incidental damages, personal injury damages including for mental anguish, exemplary damages, pre- and post-judgment interest, court costs, and attorneys' fees.

**Count 4 – Negligent Misrepresentation (against the Receiver)**

50. Plaintiffs repeat and incorporate the allegations contained in paragraphs 1 – 49 herein for all purposes and plead the following cause of action alternatively to the extent necessary.

51. SIB made a representation to Plaintiffs in the course of SIB's business or in a transaction in which SIB had an interest. SIB supplied the information for the guidance of others. SIB did not exercise reasonable care or competence in obtaining or communicating the information. Plaintiffs actually and justifiably relied upon the representation, which proximately caused Plaintiffs to suffer injury. Alternatively, SIB was grossly negligent in making this representation. Plaintiffs seek recovery of all remedies to which they are entitled, including but not limited to actual damages, out-of-pocket expenses, consequential damages, lost profits, lost income, incidental damages, personal injury damages including for mental anguish, exemplary damages, pre- and post-judgment interest, and court costs.

**Count 5 – Negligence, Breach of Trust, and Professional Negligence (against the Receiver)**

52. Plaintiffs repeat and incorporate the allegations contained in paragraphs 1 – 51 herein for all purposes and plead the following cause of action alternatively to the extent necessary.

   © 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

53. SIB provided professional services to the Plaintiffs. SIB had a duty to provide these services to the Plaintiffs non-negligently, a duty to maintain ordinary standards of care and professional standards of care, and a duty not to breach the Plaintiffs' trust. SIB, its employees, or other entities or persons for whose acts or omissions may be vicariously liable breached these duties. These breaches caused the Plaintiffs' injuries. SIB is liable to the Plaintiffs for these injuries, namely, loss of the Plaintiffs' deposits at SIB. Plaintiffs seek recovery of all remedies to which they are entitled, including but not limited to actual damages, out-of-pocket expenses, consequential damages, lost profits, lost income, incidental damages, personal injury damages including for mental anguish, exemplary damages, pre- and post-judgment interest, and court costs.

## VI. Jury Demand

54. Pursuant to FED. R. CIV. P. 38 and U.S. CONST. Amend. VII, Plaintiffs demand a trial by jury.

## VII. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray the Defendants be cited to appear, and following trial by jury, the Court enter judgment awarding Plaintiffs:

1. all relief requested herein;
2. all damages requested herein;
3. the declaratory judgments requested herein;
4. pre-judgment interest;
5. post-judgment interest;
6. court costs;
7. attorneys' fees;
8. all writs necessary to effectuate the judgment; and

© 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

9. all such other and further relief, both general and special, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Telecopier

By: _____
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Lance Hunter "Luke" Beshara
Texas State Bar No. 24045492
lbeshara@pulmanlaw.com
Adam S. Block
Texas State Bar No. 24066850
ablock@pulmanlaw.com

**ATTORNEYS FOR FOR DOUGLAS MACARTHUR AND ADELE MACARTHUR**

© 2010 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP